UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DEBORAH E. STONE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 4:08-cv-0100-SEB-WGH |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Deborah E. Stone ("Stone") seeks judicial review of the partial denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Stone filed an application for DIB on October 4, 2000, alleging an onset date of disability as of October 31, 1996. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on May 20, 2003. Stone appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Stone and a vocational expert testified at the hearing. The ALJ issued a decision on July 11, 2003, denying benefits through December 31, 2001, her date last insured. On January 6, 2004, the Appeals Council denied Stone's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). Stone commenced a civil action in the United States District Court for the Southern District of Indiana seeking judicial review of the ALJ's decision. *Stone v. Barnhart*, 4:04-cv-54-SEB-WGH (S.D.Ind. Nov. 9, 2004). Thereafter, the parties stipulated that the action be remanded for further administrative proceedings. The Appeals Council then vacated the final decision and remanded the case to an ALJ for further proceedings.

In the meantime, Stone filed an application on February 18, 2004, for SSI, alleging disability beginning October 31, 1996. This application was denied initially and upon reconsideration. Stone requested a hearing. The ALJ consolidated the SSI claim with Stone's prior DIB claim and a hearing was conducted on August 8, 2007. Stone appeared with her attorney. Stone, three medical experts and a vocational expert testified. At the

hearing, Stone amended her alleged onset date to November 7, 2001. Medical and other records were introduced into evidence. The ALJ issued a decision on August 16, 2007, finding that Stone was not disabled from November 7, 2001, through July 12, 2002, and as of April 26, 2004, but that she was disabled from July 12, 2002, through April 25, 2004. On May 29, 2008, the Appeals Council denied Stone's request for review, making the ALJ's decision final. This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Stone last met the insured status requirements of the Act on December 31, 2001; (2) Stone had not engaged in substantial gainful activity since November 7, 2001, the amended alleged onset date; (3) at all times relevant to the decision, Stone had severe impairments consisting of lumbar disc disease, cervical disc disease, bilateral carpal tunnel syndrome, high blood pressure, bilateral knee arthritis, lung disease and obesity; (4) from July 12, 2002, until April 25, 2004, the period during which Stone was disabled, the severity of her cervical disc disease equaled the criteria of section 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) for purposes of SSI only, Stone was under a disability, as defined by the Act, from July 12, 2002, until April 25, 2004, but because Stone last met the disability insured status requirements of the Act on December 31, 2001, this finding does not establish disability under Title II for DIB; (6) medical improvement occurred as of April 25, 2004, the date Stone's disability ended; (7) Stone did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 before July 12, 2002, and in addition, Stone had not had an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 since April 25, 2004; (8) the medical improvement that occurred was related to the ability to work because Stone no longer had an impairment or combination of impairments that met or medically equaled a listing; (9) from Stone's amended alleged onset date of November 7, 2001, until the established onset date of July 12, 2002, and from April 26, 2004, to the date of the ALJ's decision, Stone had the residual functional capacity ("RFC") to perform a limited range of sedentary work, with a required sit/stand option, and she could lift and carry up to ten pounds occasionally and less amounts frequently, and could not tolerate moderate exposure to extremes of heat, cold, humidity, fumes, odors, gases, noxious fumes and high levels of particulates; (10) Stone was unable to perform her past relevant work; (11) Stone had no acquired work skills transferring to occupations that she remained capable of performing; (12) Stone was born on December 18, 1958, and was forty-eight years old, which is defined as a younger individual; (13) Stone had completed at least a high school education; and (14) considering Stone's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that for purposes of SSI only under Title XVI, Stone was disabled within the meaning of the Act from July 12, 2002, until April 25, 2004, and that Stone had not been disabled within the meaning of the Act at any time material to the ALJ's decision for purposes of DIB under Title II.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Stone had severe impairments consisting of a lumbar disc disease, cervical disc disease, bilateral carpal tunnel syndrome, high blood pressure, bilateral knee arthritis, lung disease and obesity, but that Stone could perform a significant number of sedentary, unskilled jobs in the national economy. Stone argues that the ALJ's decision is not supported by substantial evidence.

Stone first asserts that the ALJ erred in finding that Stone's impairments did not meet or equal Listing 1.04A (disorders of the spine)[1] before July 12, 2002, and after April 25, 2004. Stone, as the claimant, "has the burden of showing that [her] impairments meet a listing, and [s]he must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ discussed Listing 1.04A and the opinion of one of the medical experts, Dr. Lorber, that Stone's impairments equaled the criteria for a period of time. (R. at 666, 670). The ALJ noted that Stone required two cervical spine surgeries between July 12, 2002 and April 25, 2004. (R. at 666). A fusion conducted on August 27, 2002, was not successful, and a second fusion was conducted on August 25, 2003. *Id.* Dr. Lorber, board certified in orthopedic surgery, explained that a cervical spine CT scan conducted on March 16, 2004, showed that the second surgery had been successful, and that an MRI and CAT scan performed on April 25, 2005, revealed no evidence of a disc herniation. (R. at 666, 902-06). Dr. Lorber testified that Stone's impairments during the closed period of time equaled, rather than met, Listing 1.04A because there was no evidence of focal neurologic deficit as required by the listing. (R. at 906). The ALJ determined that medical improvement occurred after the second surgery. (R. at 666). Stone has not pointed the court to medical source evidence which shows that her impairments satisfied all of the criteria of Listing 1.04A before July 12, 2002, and after April 25, 2004. The ALJ's determination at step three of the analysis is supported by substantial evidence. Accordingly, the ALJ did not err in finding that Stone's impairments satisfied Listing 1.04A for a closed period of time for purposes of SSI.

Next, Stone argues that the ALJ's credibility determination was erroneous. She argues that the ALJ erred in discounting her credibility based on a lack of objective medical evidence to corroborate her testimony. In determining Stone's credibility, the ALJ recited the appropriate regulations. (R. at 666, citing SSR 96-7p, SSR96-4p, and 20 C.F.R. § 404.1529). The ALJ discussed each of the statutory criteria in the context of Stone's testimony and other evidence. (R. at 667-673). The ALJ acknowledged that Stone's medically determinable impairments could reasonably be expected to produce the alleged symptoms of dizziness and medication side effects, but determined that Stone's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (R. at 673). The ALJ noted that although Stone had reported dizziness and headaches to her doctors, there had been no need for doctor's office, emergency room or hospital treatment for these symptoms. *Id.* The ALJ noted that Stone was able to

---

[1] 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

4

complete a battery of standardized tests without significant difficulty, which was a measure of her ability to attend to tasks despite her subjective complaints. *Id.* The ALJ also stated that there were large gaps in Stone's medical records during which she received no treatment. *Id.* Stone was not fully compliant with treatment. *Id.* She had failed to follow instructions to exercise, lose weight, gain strength and gain conditioning, which undermined her credibility. *Id.* The ALJ observed Stone at the hearing and found her testimony to be inconsistent and exaggerated. *Id.*

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ provided specific reasons for his finding that Stone was not fully credible and those reasons are supported by the record. In this case, the ALJ discussed in detail the appropriate factors in weighing Stone's credibility. The ALJ's discussion relating to Stone's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

Stone next contends that the ALJ failed to consider evidence that favored her claim of disability. Stone argues that the ALJ improperly rejected all evidence of disability by treating physicians and instead relied on the testimony of non-examining non-treating physician Dr. Lorber. Stone asserts that the ALJ should have given controlling weight to the opinion of treating physician Dr. Kodner that Stone was totally unable to work. On November 7, 2001, Dr. Kodner opined that Stone could sit a total of two hours in an eight hour work day, stand/walk a total of four hours in an eight hour work day, could not lift or carry more than five pounds, no pushing and pulling of arm controls, could not use her feet for repetitive leg controls, and could never bend, squat, crawl or climb. (R. at 392). The ALJ discussed Dr. Kodner's report, noting that the physician did not indicate the duration he expected the restrictions to last. (R. at 670). The ALJ noted that Dr. Kodner's August 2001 report was completed for purposes of food stamps and a temporary assistance program. (R. at 670, 389). The ALJ determined that Dr. Kodner's intent was to complete forms for a short-term disability program rather than to identify permanent restrictions and limitations. (R. at 670). Although it is true that the August 2001 form was completed for purposes of the short term programs, Dr. Kodner indicated on that form that a number of the limitations listed were "indefinite." (R. at 390). The ALJ also stated that the restrictions were based on Stone's back but that Dr. Kodner did not complete a back evaluation when he saw Stone in August or November 2001. (R. at 670). Thus, the ALJ found the foundation for the reports was weak and it appeared to be based primarily on Stone's subjective complaints. *Id.* The ALJ also relied on the opinion of medical expert Dr. Lorber, who testified that the degree of Dr. Kodner's restrictions was without objective foundation. (R. at 670, 905, 907).

5

Stone contends that the ALJ also failed to credit the neurosurgical evaluation of Dr. Harpring. Dr. Harpring was Stone's treating neurosurgeon. The ALJ stated that Dr. Harpring examined Stone on September 8, 2004, noting that the x-rays had demonstrated solid fusion. (R. at 671). Dr. Harpring stated that he planned to continue conservative care. *Id.* Dr. Harpring next saw Stone seven months later, on April 14, 2005. The ALJ discussed that examination, noting that Stone continued to complain of posterior cervical pain, left upper extremity radiating pain, intermittent finger tingling and numbness, and some right upper extremity symptoms. *Id.* The examination showed that Stone's neck was tender and she had some muscle spasms. *Id.* Stone had not gone to pain management. *Id.* Dr. Harpring recommended diagnostic imaging studies. *Id.* Dr. Harpring reviewed the studies on May 12, 2005, stating that Stone had no significant stenosis or spinal cord impingement. *Id.* The ALJ noted that Dr. Harpring opined that Stone did not need any additional surgery. *Id.* Stone was advised to go to pain management or physical therapy. *Id.* The ALJ noted that Dr. Harpring completed a physical capacities evaluation on August 30, 2006. (R. at 672, 835). In that evaluation, the physician opined that Stone could work for only three hours of an eight hour day. *Id.* The ALJ stated that Dr. Harpring's opinion was not consistent with the physician's own reports and that the clinical findings did not support Dr. Harpring's conclusions. (R. at 672). The ALJ stated that the diagnostic imaging studies did not support Dr. Harpring's conclusions and there was no explanation for the conclusions. *Id.* The ALJ hypothesized that Dr. Harpring's opinion was based on Stone's subjective complaints instead of objective evidence. *Id.* The ALJ concluded that Dr. Harpring's opinion was "suspect" and had "limited probative value" because it lacked an objective foundation and an explanation. *Id.*

Medical expert Dr. Lorber opined during the hearing that the August 30, 2006, report by Dr. Harpring was not supported by the evidence. (R. at 906). Dr. Lorber opined that Stone's impairments equaled the criteria for Listing 1.04A from July 12, 2002, until April 25, 2004, but that she did not have an impairment or combination of impairments that met or equaled a listing prior thereto or thereafter. (R. at 673). The ALJ reasoned that Dr. Lorber was a specialist in orthopedic medicine and his opinion was based on a recent and comprehensive review of all of the relevant medical evidence. *Id.* The ALJ determined that Dr. Lorber's opinion had the best foundation of any medical opinion of record. *Id.* The ALJ concluded that Dr. Lorber's opinion was highly probative of Stone's RFC and was entitled to great weight, more than all other opinions of record. *Id.*

"A treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir.2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus too quickly find[s] disability." *Id.* (internal quotation omitted). "Accordingly, if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Id.* Under the circumstances of this case, the ALJ articulated the weight he accorded to the opinions of the treating physicians. He discussed the opinion of the medical expert and explained why he gave the most weight to that opinion. The ALJ's evaluation of the medical opinions are supported by relevant evidence sufficient to support his conclusions.

Stone's final challenge to the ALJ's RFC assessment follows from her prior arguments. She contends that the ALJ's RFC assessment is contrary to the evaluations made by her treating physicians and disregards her symptoms of pain and dizziness. Stone argues that because the ALJ's RFC determination was incomplete and inaccurate, the resulting hypothetical posed to and the testimony given by the vocational expert are flawed. If the court had found that Stone's claims warranted a remand in this case, then it would follow that the ALJ's RFC's determination and the resulting conclusion at step five would also be erroneous. This, however, is not how the court evaluated Stone's contentions in this case.

As noted above, the court's role in this case is not to attempt a *de novo* determination of Stone's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Stone's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Stone's applications for SSI and DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Stone is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/27/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana